GREen, J.
delivered the opinion of the court.
This bill is filed by the children of Jesse Haynie, deceased, against the executor of their father’s will, to recover certain moneys which they alledge came to the hands of the testator in his lifetime, and which belonged to them under the will of their grandfather, Elijah Humphreys, who died many years ago in North Carolina.
The facts are shortly these: The defendant’s testator, Jesse Haynie, had married Rhoda, the daughter of the said Elijah Humphreys, who in 1794 by his will devised certain negroes to his daughter Rhoda Haynie for life, and after her death, to her cbildi'en, if any of them come of age, to be divided equally among them. By another clause in the will, he directed that after the death of his wife all the residue of his estate be divided into five parts — one part of which to go to the children of his daughter Rhoda Haynie, to be secured to them by his *291 executors, and to be delivered to them as they should come of age, share and share alike.
Rhoda Haynie died in 1815, at which time the'right of the complainants to the negroes devised to her for life accrued* The money arising from the residuary clause of Elijah Hum-phreys’ will, to which the complainants were entitled, was received by their father (if received by him at all) in the year 1805, and previously.
This bill was filed in 1842. The defendant relies on the statute of limitations as a bar to the recovery of the negroes, or money demanded by the bill.
The Chancellor dismissed the bill as to the claim of the ne-groes, but decreed for the complainants the sum of two hundred and twenty-five dollars, with compound interest. The defendant appealed, and the complainants prosecute a writ of error.
Lewis Haynie, the youngest of Rhoda Haynie’s children, was born 20th of January, 1806, and was upwards of thirty-six years old when the bill was filed. His right of action had accrued, and his disability to sue had been removed for fifteen years. Each of the daughters o'f Rhoda Haynie arrived at the age of twenty-one years, and were married after the death of their mother. So that more than three years elapsed after the action accrued to each, and neither of the complainants fall , within any of the exceptions of the statute.
But it is argued, and so the Chancellor thought, that as regards the money legacy due the complainants from their grandfather’s estate, and which it is assumed their father received in 1805, the statute of limitations does not apply; that he held the money as a trustee of such character, that a court of equity will not permit him to rely on the lapse of time. The statute of limitations prescribes, that certain forms of action shall be barred within the terms limited, and therefore in its terms it does not apply to courts of equity; but the courts of chancery, both of Great Britain and this country, have uniformly held, that in cases where any remedy exists at law, • if a court of chancery gains jurisdiction of a cause, the time fixed in the statute as a bar to the action at law will also be a bar to a bill in chancery. All that class of trusts, therefore, that become such by matter *292 of evidence, where a party takes possession in his own right, are equally subject to the operation of the statute of limitations in courts of equity, as would be the corresponding actions prosecuted in a cou rt of law. But in express, or direct trusts, created by the contract of the parties, the statute of limitations does not operate. In such cases the trustee takes possession, and holds for another. His possession is the possession of that other, and there can be no adverse holding, until the trustee denude himself of his trust, by assuming to hold for himself, and notifies the cestui qua trust of his treachery. In these cases, no action at law can be maintained. The remedy is only in a court of equity. The statute of limitations, therefore,'has no application to them. Apply these principles to the case before us: The complainants are entitled to a sum of money in North Carolina, by the will of their grandfather. Their father procures the executor of Humphreys’ will to pay this money to ■ him. Now, in receiving it, how does he become a direct or express trustee? He stood in no legal relation to the parties by which he was entitled to receive it, as an executor, administrator, or guardian does: on the contrary, he was their self-constituted agent. He received the money by wrong, and held it in his own right.
' But having possessed himself of the money of these complainants, they had a right of action against him to recover it, and might have sued him at law, for money had and received.
In the case of Smart vs. Waterhouse, (10 Yerg.R. 94,) Water-house, the executor, was held to be an express trustee, and not protected by the statute of limitations; but that case differs materially from the one before the court.
The executor of Elijah Humphreys’ will was an express trustee; but when Jesse Haynie received the money from said executor, he was placed in a very different relation to the complainants from that in which the executor had stood. The law, to be sure, would turn him into a trustee; but he did not become such by contract, but was such by implication of law, because of his wrongful possession of money which did not belong to him: nevertheless, he held it in his own right and for his own benefit, adversely to the complainants.
*293 This distinction is plainly taken in the case of Armstrong vs. Campbell, (3 Yerg. R. 212.) In that case Campbell acted under a contract with Armstrong, and the court held that he was an express trustee, and was not protected by the statute of lirnita-tions: but Trimble, who purchased for Campbell with a knowledge of the trust, but who had nothing to do with Armstrong, was regarded as a trustee by implication of law, and it was held that the statute of limitations was a bar to a recovery against him. That case presents the very principle of the case before us. The executor of Humphreys is an express trustee: but he pays over the money to Haynie, who becomes a trustee by operation of law. The executor could not plead the statute of limitations, because his possession was the possession of the complainants, but Haynie is protected by the statute, because his possession was adverse to the complainants and for himself.
It is argued, that the defendant’s testator was the natural guardian of his children, and as such was an express trustee.
It is true, the father; is the natural guardian of his children; but he is the guardian for nurture only. He has no authority to intermeddle with their estate. Besides, his guardianship for nurture ceased upon his children becoming of age.
It is argued, that the cause of action in this case was unknown to the complainants, and was concealed by the defendant’s testator by fraud. But of this allegation there is no evidence. The mere fact, that Jesse Haynie did not disclose to his children all the facts in relation to their grandfather’s will, and'his own reception of money from the estate, does not constitute fraud. The will was of record in North Carolina, and they knew that they had rights growing out of the provisions of ’ that will. Their father could not conceal from them a knowledge of their rights, if they had chosen to investigate them. Piad he'made false representations to them, by which they were prevented from investigating the matter and ascertaining their right of action, it would have been a concealment of the cause of action by fraud; and in such case the statute of limitations would commence to run only from the time the cause of action was discovered. But no such misrepresentation is proved, *294 and his mere silence under the circumstances was no fraudulent concealment.
Much is said in the argument about the rigor of 'Jesse Hay-nie’s parental government — of the influence he exercised over his children, causing them to acquiesce in his demands — and their forbearance to sue, lest they should offend him. Doubtless, the disinclination to offend their father, and their expectations from his estate, constituted (and very properly) the controlling motive in preventing the institution of this suit in his lifetime. But these circumstances can have no influence in the"decision of this cause, as they constitute no exception to the operation of the statute of limitations.
• Reverse the decree, and dismiss the bill.